

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

IN RE:

PAUL JONES and RHONDA M. JONES,     }
                                  }**Case No. 08-40069-JJR-13**

           **Debtors**         }

                                         }

_____ }

PAUL JONES and RHONDA M. JONES,     }

          **Plaintiffs,**       }

v.                                      }**Adversary Proceeding No. 08-40027-JJR**

REGIONAL ACCEPTANCE CORPORATION, }

          **Defendant.**       }

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On April 8, 2008, the debtors and plaintiffs, Paul Jones ("Jones") and Rhonda Jones ("Rhonda" and together with Jones, the "Plaintiffs") filed an Adversary Complaint (AP Doc. 1 and herein, the "Complaint")[1] against creditor and defendant, Regional Acceptance Corporation ("Defendant"). The Plaintiffs are claiming damages and attorney's fees for alleged violations of the disclosure requirements of the Truth in Lending Act (15 U.S.C. § 1601 *et seq* and herein, "TILA") and Regulation Z promulgated by the Board of Governors of the Federal Reserve System to implement TILA (12 C.R. § 226.1 *et seq*, and herein, "Reg. Z"). The Defendant filed a Motion for Summary Judgment (AP Doc. 17 and herein, the "Defendant's Motion") pursuant to Rule 7056 of

---

[1] Pleadings and other documents filed in this adversary proceeding and the underlying bankruptcy case are identified as "AP Doc.__" and "BK Doc. ___," respectively.

the Federal Rules of Bankruptcy Procedure[2] alleging there is no question of material fact and it is entitled to a judgment in its favor as a matter of law. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. For the reasons stated below, the Court is granting the Defendant's Motion.

In compliance with Rule 7052(a), the following shall constitute the Court's findings of fact and conclusions of law.

FINDINGS OF FACTS:

*Purchase and Financing of Automobile, TILA Disclosures*

On September 20, 2006, Jones purchased a new Dodge automobile (the "Dodge") from Birmingham Dodge Chrysler Jeep (the "Dealer"). The total price of $20,732.67 was financed by the Dealer. The purchase and financing was memorialized in a Retail Installment Contract and Security Agreement (Exhibit B to the Complaint and herein, the "RICSA") dated the date of the purchase. Also on that same day, the RICSA was assigned to the Defendant.

The TILA disclosures were on the face of the RICSA. Included in the "Itemization of Amount Financed" is a line item which reads, "To: COURTESY GAP FOR GAP $ 330.00 ." This $330.00 was the premium for guaranteed asset insurance protection insurance ("GAP Insurance") purchased by Jones to cover his new car. If the car was damaged or stolen resulting in a total loss and if Jones' collision and comprehensive insurance did not fully pay the outstanding

---

[2] All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

purchase money loan, the GAP Insurance was suppose to pay the difference – the "gap." The GAP Insurance premium was not included in the Finance Charge and was not included as a costs of credit in determining the Annual Percentage Rate.

In the left-hand column of the RICSA is a section entitled CREDIT INSURANCE, which reads as follows:

> Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.
>
> Credit Life: Insured_____
>     ❑ Single ❑ Joint  Prem $_____ N/A \_\_\_\_\_ Term\_\_\_\_\_ N/A \_\_\_\_\_
> Credit Disability: Insured_____
>     ❑ Single      Prem. $_____ N/A \_\_\_\_\_ Term\_\_\_\_\_ N/A \_\_\_\_\_
>
>
> Your signature below means you want (only) the insurance coverage(s) quoted above. If none are requested, you have declined any coverages we offered.
>
> _____    _____
> Buyer                d/o/b          Buyer             d/o/b

Following the above section is a section pertaining to property insurance and single interest insurance. The spaces for premium quotes, like those for credit insurance, are all completed with "N/A," the abbreviation for not applicable.

Affidavits submitted in support of the Defendant's Motion identified and authenticated a copy of the same RICSA attached to the Complaint, and a copy of the Guaranteed Asset Protection (GAP) Application dated September 21, 2006 (the "GAP Application") signed by Jones and the Dealer. The GAP Application disclosed the following: (i) the GAP Insurance premium – $330.00;

(ii) the effective date – 02/21/06; (iii) the expiration date – 09/05/2012; and (iv) the term – 72 months.  It also identified the insured as Jones, the creditor as the Defendant, the Dodge as the insured vehicle, and the Dealer.  Appearing in the middle of the GAP Application, with each line underlined, is the following paragraph:

> I understand that the purchase of Gap Insurance is not required nor is it a condition of the extension of credit.  I understand that Gap Insurance will not be provided unless I sign this Application and agree to pay the Gap Insurance price identified above.  I understand that if I desire Gap Insurance, I do not have to obtain such coverage from this Dealer/Creditor, I may obtain such coverage from an alternative source.  I acknowledge that the information contained in this Application is, to the best of my knowledge, true.

Other than the short title of headings, the above paragraph is the only underlined pre-printed language in the GAP Application.  Following the above paragraph are the "Insured Signature" and the "Dealer Signature," and opposite each signatures is "Date:   09/21/2006."  Below the signatures are the terms of the "POLICY COVERAGE" including the "Insuring Agreement" and "Limit of Liability."

### *Plaintiffs' Chapter 13 Bankruptcy*

On January 14, 2008, the Plaintiffs filed a joint petition for relief and the required schedules under chapter 13 of the Bankruptcy Code.[3]  In Schedule B - Personal Property (included in BK Doc. 2), the Plaintiffs listed a 1999 Mercury as their only vehicle; they made no mention of the Dodge purchased approximately 16 months earlier.  They did not list as an asset any potential claim or cause of action against the Defendant or any other party. In their original Schedule D - Creditors Holding Secured Claims (included in BK Doc. 2), the Plaintiffs named the Defendant as one of their secured

---

[3]  11 U.S.C. § 101 *et seq*. and herein, the "Bankruptcy Code" or "Code."  In this Opinion, the term "Section" refers to a section or subsection of the Code.

4

creditors. The Dodge was not specifically identified as security for the debt owing to the Defendant. The debt was described as: "Incurred: 11/04/2006" – "Lien: auto installment loan" – "Security: automobile" – "Value $12,317.52." The amount of the debt was shown as $12,317.52, with no portion being unsecured. It was listed as Jones' sole obligation, and not as a joint debt owing by Rhonda. Schedule D was amended May 5, 2008 (BK Doc. 103), and the amount of the debt and value of the collateral were changed to $22,500.55. Finally, on Schedule C - Property Claimed as Exempt (included in BK Doc. 2), the Plaintiffs claimed a $500.00 exemption for their 1999 Mercury but made no mention of the Dodge.

The Plaintiffs' original chapter 13 plan (BK Doc. 19) listed the Defendant as a secured creditor holding a debt of $12,317.52 secured by an "auto," which was also valued at $12,317.52. The original plan had a commitment period of 60 months and proposed to pay the Defendant through the chapter 13 trustee with monthly installments of $272.01 each, which included interest at 6.5%. The original plan did not provide for any payments to unsecured creditors. Thus, any portion of the Defendant's debt found to be unsecured under Section 506(a) would not be paid.

On February 5, 2008, the Defendant filed its proof of claim in the Plaintiffs' bankruptcy case (Claim # 4 and herein, the "Proof of Claim") in the amount of $22,500.55. The Proof of Claim stated the debt was fully secured by a security interest in the Dodge. Copies of the RICSA and the certificate of title covering the Dodge were attached to the Proof of Claim. The Defendant was identified as the first lienholder on the certificate of title.

On February 6, 2008, the Defendant filed an Objection to Confirmation (BK Doc. 39). In its objection, the Defendant stated it held a perfected, purchase money security interest in the Dodge which secured a debt in the amount of $22,500.55, and it alleged the proposed plan did not

5

adequately protect the Plaintiffs' interest in the Dodge.

On April 2, 2008, the Plaintiffs filed a Motion to Value Security (BK Doc. 66) pursuant to Section 506(a), seeking to value the Dodge at $15,725.00. Supporting the Motion to Value was an Affidavit by Jones and a copy of a page from the NADA vehicle pricing guide indicating the value of a 2006 Dodge, like the one securing the Defendant's debt, had a clean trade-in value of $15,725 and a clean retail value of $18,300. The Defendant filed a Response (BK Doc. 80) to Debtors' Motion to Value Security and objected to the Plaintiffs' attempt to value the Dodge under Section 506(a). The Defendant argued that because the purchase money debt secured by the Dodge was incurred within 910 days preceding the bankruptcy filing date, the hanging paragraph at the end of Section 1325(a) prohibited valuation under Section 506. Apparently the Plaintiffs conceded because they filed a Motion to Withdraw (BK Doc. 84) their Motion to Value, stating it was filed in error.[4]

On May 5, 2008, the Plaintiffs filed their first amended chapter 13 plan (BK Doc. 102). They increased the amount of the debt owing to the Defendant to the amount claimed by the Defendant in its Proof of Claim and Objection to Confirmation (i.e. $22,500.55), increased the interest rate to 8.5%, and proposed to pay the Defendant's claim in full through the trustee with monthly installments of $502.89 each. There was no mention or reservation made with regard to the claims made in the Plaintiffs' Complaint. Apparently the first amended plan satisfied the Defendant, and it filed a Withdrawal of Objection to Confirmation (BK Doc. 110). The Plaintiffs filed a second amended plan on May 19, 2008 (BK Doc. 120); however, it made no change in the proposed payment or treatment of the Defendant's claim.

---

[4] BK Docs. 66, 80, and 84 all received a Notice of Incorrect Event from the clerk's office due to filing errors; thus, none of these pleadings were set for hearing.

6

On May 23, 2008, the Court entered a Confirmation Order (BK Doc.126 and herein the "Confirmation Order") confirming the Plaintiffs' last amended plan (the "Plaintiffs' Plan"). The Confirmation Order directed the trustee to pay the Defendant's claim (Claim #4) with monthly installments of $502.89. Although the Complaint had been filed and served for over a month,[5] there was no mention made in the Plaintiffs' Plan or the Confirmation Order of this adversary proceeding or the TILA claims asserted in the Complaint.

*Plaintiffs' Position* and *Arguments*

In their Complaint, the Plaintiffs alleged the disclosures made with respect to the GAP Insurance "violate TILA in one or more of the following ways:

A.     Not grouped together with other disclosures concerning voluntary credit insurance products; and/or

B.     Not clearly disclosed;

C.     Not conspicuously disclosed;

D     And not provided to [Jones] in compliance with the TILA prior to consummation."

In their responses (AP Doc's 37 and 42) to the Defendant's Motion, the Plaintiffs acknowledge TILA "allows certain disclosures, including the identity of the Creditor, and Debt Cancellation agreements (whether or not considered insurance), to be made separate and apart from the primary, segregated 'boxed' disclosures of the APR." Nonetheless, the Plaintiffs argue all disclosures pertaining to credit insurance must be grouped together and not separated among different documents. They assert there was sufficient space in the CREDIT INSURANCE section

---

[5]  The Complaint was filed April 8, 2008, and according to the Certificate of Service (AP Doc. 3), service was made on April 9, 2008. The Defendant entered an appearance in this adversary proceeding April 29, 2008 (AP Doc. 6).

7

of the RICSA to insert the GAP Insurance disclosures. The Plaintiffs also argue that because Jones did not sign below the Credit Insurance section, (i.e. "Your signature below means you (only) want the coverages quoted above. If none is quoted, you have declined any coverages we offered."), he "did not knowingly, and affirmatively, choose to purchase insurance - any kind - including GAP insurance."

The Plaintiffs also complain that under the Itemization of Amount Financed in the RICSA, the GAP Insurance premium was not disclosed on the pre-printed line designated "Insurance Premium*," but rather it was disclosed on a line typewritten to read "To:  Courtesy GAP for GAP $330.00." Finally, the Plaintiffs state the creditor is the only party to a credit transaction authorized under TILA to make the required disclosures, and they complain the identity of the "Creditor" is not sufficiently disclosed in the GAP Application.

In his Affidavit filed in opposition to the Defendant's Motion, Jones recited the events surrounding his purchase and financing of the Dodge from the Dealer: Jones and his wife met with a salesman one day, discussed payments, and without mentioning he signed any documents, Jones stated, "Rhonda & I drove away with our new car." The next day Jones received a call from a woman with the Dealer who told him to return and "sign more papers." (Thus, Jones must have signed some papers the first visit). Jones stated, "[a]t no time during either this occasion or any prior time, was GAP insurance ever mentioned. And, I still don't know what GAP insurance is." During the second visit, Jones said he signed several documents prepared by the Dealer, and the Dealer's representative "did not ever give me the papers to look over. Instead, he held each one and directed me where to sign; I signed and then he took each away and presented a new paper. . . . I did not understand that I was being charged for any kind of insurance, and was not provided with any papers

8

which would have gotten my attention that I was purchasing GAP insurance."

*Defendant's Position and Arguments*

In its Memorandum (AP Doc. 18) filed in support of the Defendant's Motion, the Defendant argues the disclosures in the RICSA and GAP Application comply with TILA and Reg.Z, and more specifically, it was proper to make the disclosures relating to the GAP Insurance on the separate GAP Application. The Defendant also asserts the Plaintiffs' claims are barred by the TILA one-year statute of limitations, and because no reservation for the TILA claims was made in the Plaintiffs' Plan or the Confirmation Order, such claims are barred by the doctrine of claim preclusion (i.e. *res judicata*). Even if there were TILA violations, the Defendant states because it is an assignee of the original creditor, it cannot be held liable for violations not evident on the face of the disclosure documents. Finally, the Defendant asked for Rhonda Jones to be dismissed as one of the Plaintiffs because only her husband, and not her, was a party to the credit transaction.

In his affidavit filed in support of the Defendant's Motion, Jim Black stated no representative of the Defendant was present when the underlying transaction took place at the Dealer's showroom. Thus, as an assignee, the Defendant could not be expected to know the circumstances surrounding the sale and financing of the Dodge, other than from what appears on the face of the financing documents. Kelly McMillin, the Dealer's controller and custodian of the books and records concerning Jones' account, also submitted an Affidavit on behalf of the Defendant. McMillin stated, "Jones signed the GAP Application before signing the [RICSA]. No portion of the GAP Application or any other document was suppressed or concealed from Mr. Jones. He was given an opportunity to ask questions about any or all of the written terms of the transaction at issue before signing the documents." McMillin concluded by stating, "the above and foregoing facts are of my own personal

9

knowledge and belief and if called upon to appear as a witness, I could and would, testify competently thereto."

DISCUSSION AND CONCLUSIONS OF LAW:

*Burden of Proof Applicable to Summary Judgment*

Summary judgment is due to be granted pursuant to Rule 7056 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 7056(c). "A party seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of [the evidence submitted per Rule 56] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court is to determine whether there is a genuine issue of material fact to be determined at trial rather than to weigh the evidence before it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The court draws all reasonable references from the evidence in the light most favorable to the non-moving party. *Id.* at 255. Though the movant bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial," the opposing party may not rest or rely on mere allegations or denial of the pleadings. *Id.* at 256. Once the moving party has met its initial burden, the party opposing summary judgment must present specific facts showing there is a genuine issue for trial. *Id.* at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to such party's case on which the non-moving party would bear the burden of proof at trial, the court may grant summary judgment against that non-moving party. *Celotex*, 477 U.S. at 322.

10

*Merits of Truth-in-Lending Claims*

TILA defines "finance charge" as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Premiums paid for debt cancellation coverage, such as GAP Insurance, are, without more, required to be included in the finance charges. 12 C.F.R. § 226.4(b)(10). Nonetheless, Reg. Z permits the GAP premiums to be excluded from the finance charge if three conditions are met:

1.  GAP insurance is not required by the creditor as a condition to the extension of the loan, and this fact is disclosed in writing;

2.  The premium for the initial term of the coverage is disclosed, and if the term is less than the term of the loan, the term of the GAP coverage is likewise disclosed; and

3.  The borrower signs or initials a written request for GAP insurance after receiving the above disclosures.

12 C.F.R. §§ 226.4(d)(1), (3), and 226.18(n).

The Defendant argues the disclosures for GAP Insurance were adequately made in the GAP Application and the premium was not required to be included in the Finance Charges. In support of its argument, the Defendant relies heavily on the recent unpublished decision by the Eleventh Circuit in *Jones v. General Motors Acceptance Corp.* (*In re Jones*), No. 07-15176, 2008 WL 2191780 (11th Cir. May 28, 2008). The Eleventh Circuit affirmed the Bankruptcy Court's (Caddell, J.) summary judgment granted in favor of a creditor in a case with facts and loan documents very similar to those in the instant case. *Jones v. General Motors Acceptance Corp.* (*In re Jones*), 2007 WL 1725593 (Bankr. N.D. Ala. June 13, 2007). The Bankruptcy Court's decision was also affirmed

11

by the District Court in an unpublished opinion.[6]

All TILA disclosures, including those for GAP Insurance, must be made "clearly and conspicuously in writing." 12 C.F.R. 226.17(a)(1); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Both the District and the Bankruptcy Courts' opinions in *Jones v. GMAC, supra,* cited *Lifanda v. Elmhurst Dodge, Inc.* for the premise that the clarity and conspicuousness of TILA disclosures should be scrutinized from the "standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge or English professor." *Jones v. GMAC* at *5, quoting *Lifanda v. Elmhurst Dodge, Inc.*, 237 F. 3d 803, 806 (7th Cir. 2001).

As mentioned above, Reg. Z allows premiums for GAP Insurance to be excluded from the finance charge if three conditions are satisfied, including a written disclosure that GAP Insurance is not required by the creditor as a condition to the extension of credit. In its opinion in *Jones v. GMAC*, the Bankruptcy Court found the RICSA used by the defendants did not clearly disclose GAP Insurance was not required. Nonetheless, the Bankruptcy Court found such disclosure was clearly and conspicuously made in the separate GAP Application and thereby satisfied TILA. *Id.* at *5.

The RICSA in the instant case makes no disclosure regarding the voluntariness of GAP Insurance, and the premium for GAP Insurance was disclosed only in the ITEMIZATION OF AMOUNT FINANCED and was not included in the FINANCE CHARGE. The disclosure stating "insurance coverage is not required to obtain credit" found in the RICSA section entitled CREDIT INSURANCE is by its terms applicable only to "Credit life, credit disability (accident and health), and any other insurance coverage quoted below . . . ." No other insurance was quoted, and "N/A"

---

[6] District Court Case No. 07-01398 (N.D. Ala., September 28, 2007). Inasmuch as the plaintiff in *Jones v. GMAC* and the plaintiff in this adversary proceeding have the same last name, to avoid confusion the former case will be referred to as *Jones v. GMAC*.

was typed on the lines for the premiums.  Thus the disclosure in the RICSA did not cover GAP Insurance.

However, like the GAP application in *Jones v. GMAC,* the GAP Application signed by Jones in the instant case clearly and conspicuously disclosed in the first line of the only underlined paragraph, "I understand that the purchase of GAP Insurance is not required nor is it a condition of the extension of credit."  This disclosure is virtually the same as that approved by the three courts in *Jones v. GMAC.*  Additionally, the GAP Application in the instant case clearly and conspicuously disclosed the premium, the effective date and the expiration date of coverage, though not required because the term of the GAP Insurance was the same as the loan term.  Thus, the three conditions for the GAP Insurance premium to be excluded from the finance charge were satisfied.[7]

The Plaintiffs complain the RICSA had sufficient space in the CREDIT INSURANCE section to describe the GAP Insurance as "other insurance quoted below."  Perhaps, but that fact does not invalidate the disclosures made in the separate GAP Application; Reg. Z specifically allows disclosure for debt cancellation insurance to be made separately from other required disclosures.  12 C.F.R. § 226.17(a), n. 38.  The Bankruptcy, District, and Circuit Courts in *Jones v. GMAC* found no fault with the disclosures covering GAP Insurance being made in a separate document; neither does

---

[7]  As mentioned, the GAP application reviewed by the Bankruptcy, District and Circuit Courts in *Jones v. GMAC* appears to be the very similar to the form GAP Application signed by Jones in the instant case.  The three Courts in *Jones v. GMAC* found the GAP Insurance disclosures in the separate GAP application satisfied the requirements of TILA and Reg. Z.  Although none of the three Courts' opinions in *Jones v. GMAC* is binding precedent (the 11th Cir. opinion was unpublished), this Court finds them convincing and agrees with their holdings regarding the sufficiency of the GAP Insurance premium disclosures.  (11th Cir. R. 36-2 provides, "Unpublished opinions are not considered binding precedent.  They may be cited as persuasive authority . . . .").

13

this Court.[8]

Jones also complains that in the section of the RICSA entitled ITEMIZATION OF AMOUNT FINANCED, the GAP Insurance premium of $330.00 was improperly disclosed. In the itemization, one of the pre-printed line items was designated "Insurance Premiums*"; no amount was shown on that line. Three lines below was a line item on which was typewritten:

To:  COURTESY GAP FOR GAP        $  330.00.

The name of the insurer, Courtesy Insurance Company, was clearly and conspicuously disclosed at the top of the GAP Application. However, as discussed below, there is question of material fact of when the GAP Application was signed. If it was signed after the RICSA, Jones, as an ordinary consumer, may not have known that Courtesy was the GAP insurer; thus it may not have been clear to whom, and for what purpose the $330.00 was being paid. On the other hand, if the GAP Application was signed before the RICSA, then Jones would have known the identity of Courtesy when he signed the RICSA, and the disclosure in the RICSA itemization of the amount and to whom the GAP Insurance premium was paid would have been clear and conspicuous, and would have been understood by an ordinary consumer to be the GAP Insurance premium being paid to Courtesy Insurance Company.

Reg. Z requires the creditor to make the required disclosures to the consumer. 12 C.F.R. § 226.17(a)(1). The creditor is defined as the person "to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." *Id*. §

---

[8]  In the instant case, Jones did not purchased credit life, credit disability or other quoted insurance which, if purchased, should have been disclosed in the CREDIT INSURANCE section of the RICSA. Had Jones made one or more such insurance purchases in addition to GAP Insurance, then perhaps his argument that insurance disclosures all must be grouped together in one document and in one section might deserve further review.

14

226.2(a)(17).  The creditor in this transaction was obviously the Dealer, identified in the RICSA as

the "Seller."  In the GAP Application, "Birmingham Dodge Chrysler Jeep" is typewritten on the line

identifying the "Selling Dealer."   "Regional Acceptance Corporation" is typewritten on the line

identifying the "Creditor."   The signature on the GAP Application is identified as the "Dealer

Signature."  There is no line designated for the signature of the Defendant, Regional Acceptance

Corporation.  Reg. Z does not require the creditor in a transaction to be specifically named "creditor"

on the disclosure; it does, however, require the creditor be the party making the disclosure.  As

defined in Reg. Z, the Dealer was the "creditor," and its signature appeared on the GAP Application

indicating the Dealer was making the disclosures.  Although the GAP Application does not use the

best wording to convey information of legal significance to the consumer in the credit transaction,

the Court finds an ordinary consumer would have known from the identification given to the

Dealer's signatures that the disclosures were being made by the "creditor" as the term is defined in

Reg. Z.  More importantly, it was in fact the "creditor" who made the disclosures.

TILA disclosures must be made before a credit transaction is consummated.  12 C.F.R. §

226.17(b).  A credit transaction is consummated "at the time that a consumer becomes contractually

obligated on a credit transaction."  *Id*. § 226.2(a)(13).  Jones became contractually obligated, and the

transaction was consummated when he signed the RISCA on September 20, 2006.  In their

Complaint, the Plaintiffs claim the TILA disclosures were not "provided to [Jones] in compliance

with the TILA *prior* to consummation (emphasis added)."

When considering a motion for summary judgment, the Court must construe the evidence

in a light most favorable to the non-moving party, in this case the Plaintiffs.  In his affidavit, Jones

stated he visited the Dealer on two occasions and apparently signed documents on each occasion.

15

The RICSA was dated September 20, 2006, and the GAP Application was dated the next day, September 21, 2006. If McMillin's Affidavit supporting the Defendant's Motion is to be believed, the date on the GAP Application is a typographical error.[9] Nonetheless, in the context of Jones' Affidavit, he said he visited the Dealer twice and signed papers on both occasions, the Court must find there is a question of material fact regarding whether the GAP Insurance disclosures were made before the underlying credit transaction was consummated. Since the difference in the two dates appeared on the face of the RICSA and the GAP Disclosure, the possible TILA violations were apparent on the face of the documents. Accordingly, the safe harbor provided for an assignee under 15 U.S.C. § 1641(a) does not apply to the Defendant.

### *Affirmative Defense - Statute of Limitations*

As mentioned, the credit transaction between the Dealer and Plaintiffs was consummated on September 20, 2006. Any TILA violation would have occurred on that date. Because the Complaint was filed more than one year later, the Defendant asserts the TILA claims are barred by the one-year statute of limitations found in 15 U.S.C. § 1640(e). The Plaintiffs argue § 1640(e) allows TILA claims to be asserted defensively as a recoupment after the statute of limitations has lapsed. The Defendant counters by arguing the Plaintiffs are seeking affirmative relief for their TILA claims, not merely a reduction in the amount of the Defendant's allowed bankruptcy claim. In paragraph 1 of their Complaint, the Plaintiffs averred, "this complaint seeks, via statutory recoupment . . . monetary relief . . . ." In paragraph 4 they stated, "The complaint includes claims for damages pursuant to [TILA], to recover actual damages, statutory damages, and costs including reasonable attorney fees."

---

[9] In the second paragraph of his Affidavit, McMillin stated, "Mr. Jones signed the GAP Application before signing the [RICSA]."

16

The Plaintiffs concluded their Complaint by demanding a "judgment, via statutory recoupment . . . for actual (compensatory) damages . . . plus interest . . . plus statutory damages . . . and costs and attorneys fees."

In pertinent part, § 1640(e) provides, "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." According to the Eleventh Circuit, "Recoupment is '[t]he right of a defendant, in the same action, to cut down the plaintiff's demand either because the plaintiff has not complied with some cross obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of that contract.'" *In re Smith*, 737 F.2d 1549, n. 7 (5th Cir.1984), quoting Ballentine's Law Dictionary 1070 (3d ed. 1969). Recoupment is akin to an accounting between the parties based on their obligations owing one to the other in a common transaction. After the statute of limitations has lapsed, TILA section 1604(e) allows a consumer to *defend* a collection action by recoupment, not recover a judgment. In this case, although the Plaintiffs use the word "recoupment" in their Complaint, they demand a monetary judgment for damages. A demand for such a judgment is inconsistent with recoupment, which is a defense. Although the Complaint mentions the Proof of Claim filed by the Defendant, the Plaintiffs do not seek a reduction in the Defendant's claim. Moreover, the Plaintiffs' Confirmed Plan included the total amount of the Defendant's secured claim. As discussed below, after entry of the Confirmation Order, the Plaintiffs were barred from

17

seeking a reduction by way of recoupment of the Defendant's allowed secured claim. Thus, the Court concludes the Plaintiffs have not asserted their TILA claims defensively, but rather they seek affirmative relief which is now barred by the statute of limitations. *Stallings v. General Motors Acceptance Corp.* (*In re Stallings*), 357 B.R. 647 (Bankr. N.D. Ala. 2007), *aff'd, Stallings v. General Motors Acceptance Corp.*, 07-G-0503-NE (N.D. Ala. October 8, 2008).

### *Affirmative Defense - Claim Preclusion*

The Plaintiffs' Plan proposed to pay the Defendant's secured claim in full, and neither the Confirmed Plan nor the Confirmation Order raised any objection, reservation or defense to, or sought a reduction in the claim. The Defendant argues the Confirmation Order, which confirmed the Plaintiffs' Plan, precludes the Plaintiffs from further asserting claims for alleged TILA violations. This Court agrees.

There are four conditions which must be satisfied for claim preclusion to apply: "(1) the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process; (2) the judgment must be final and on its merits; (3) there must be identity of both parties or their privies; and (4) the later proceeding must involve the same cause of action as involved in the earlier proceeding." *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.1990). Confirmation of the Plaintiffs' Plan was within the jurisdiction of this Court,[10] and the timely and adequate notice of the contents of the Plaintiffs' Plan and the confirmation hearing satisfied the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and due process. Thus, the first condition required by *Justice Oaks* for claim

---

[10] 28 U.S.C. § 157(a), (b). Indeed, plan confirmation is a core proceeding. *Id.* § 157(b)(2)(L).

preclusion was satisfied.  As to the second condition, the Confirmation Order was entered May 23, 2008, there was no appeal, and that order is now final.  The plan confirmation proceedings involved the Plaintiffs, as debtors and promoters of their proposed plan, and the Defendant, who filed a Proof of Claim as a secured creditor; thus the third condition was satisfied. That leaves only the fourth condition for consideration.

As a condition to chapter 13 plan confirmation with respect to a secured claim, a debtor must satisfy one of the three subsections of Section 1325(a)(5)(A),(B),(C).  Those subsections provide: (A) the holder of such claim has accepted the plan, (B) the plan payments have a current value equal to no less than the amount of such claim, or (C) the property securing the claim is surrendered to the creditor.  Initially, the Defendant objected to the proposed chapter 13 plan because it under-valued the Defendant's security and proposed an insufficient interest rate.  Although the Defendant withdrew its objection to confirmation after the plan was amended to its liking, there was no indication Section 1325(a)(5)(A) was satisfied by the Defendant's affirmative acceptance of the Plaintiffs' Plan.[11]  Moreover, Section 1325(a)(5)(C) was not satisfied by the surrender of the Dodge to the Defendant.  Rather, Section 1325(a)(5)(B) was satisfied by the Plaintiffs' proposal to pay the full amount of the Defendant's secured claim.  If the Plaintiffs intended to reduce the Defendant's claim for TILA violations by asserting such violations as a matter of defense by recoupment, then the Plaintiffs' Plan should not have proposed to pay the claim in full. The amount of the claim owing to the Defendant as a secured creditor was an issue resolved under Section 1325(a)(5)(B) before the

---

[11]  Even if the Defendant's withdrawal of its objection to confirmation is construed as an acceptance of the Plaintiffs' Plan the result is the same.  The Defendant would have been accepting a plan that proposed to pay its secured claim in full with interest, without reduction for Plaintiffs' alleged TILA damages.

19

Plaintiffs were entitled to confirmation of their proposed plan, and that same issue is at the core of this adversary proceeding. Plan confirmation was a final adjudication on the merits of any issue regarding the amount of the Defendant's claim, and the Plaintiffs are precluded from again relitigating that issue in this adversary proceeding. Thus, the fourth condition required by *Justice Oaks* was satisfied.

Section 1327(a) of the Bankruptcy Code provides, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Initially the Plaintiffs contested the secured amount of the Defendant's claim, but before their plan was confirmed, their Motion to Value Security was withdrawn. The Plaintiffs amended their plan to provide the Defendant's fully secured claim in the amount of $22,500.55 was to be paid over the 60 month commitment period with interest. The Plaintiffs' Plan proposed to pay nothing on unsecured claims. There was no reduction or reservation for alleged TILA violations. Pursuant to Section 1327(a), after entry of the Confirmation Order the terms of the Plaintiffs' Plan became binding on the Plaintiffs and the Defendant. If the Defendant had made an error by under-stating the amount of its secured claim, it is doubtful the Defendant would have been successful in having its claim increased after confirmation.[12] Why should the Plaintiffs fare any better? "[A] confirmed plan is

---

[12] *Cf. Universal Am. Mortg. Co. v. Bateman (In re Bateman),* 331 F.3d 821 (11th Cir.2003). In *Bateman,* the Eleventh Circuit denied the secured creditor's motion to dismiss a chapter 13 case because the amount of the creditor's deficiency claim was under-stated in the confirmed plan. The court held the *res judicata* effect of 11 U.S.C. § 1327 prohibited the creditor from raising the issue after confirmation, even though the flaw in the debtor's plan would have been grounds for denying confirmation if it had been timely raised. Nonetheless, the court held the unpaid balance of the deficiency remaining after completion of the plan was not extinguished but remained secured by the creditor's mortgage.

Case 08-40027-JJR   Doc 47   Filed 11/04/08   Entered 11/04/08 15:43:32   Desc Main
Document    Page 20 of 23

*res judicata* as to any issues resolved or subject to resolution at the confirmation hearing. Among these issues is the amount of a secured claim. Under § 1325(a)(5)(B)(ii), a chapter 13 plan must pay the full value of any allowed secured claim . . . . Accordingly, the value of a secured claim is fixed as of the effective date of the plan." *In re Gomez,* 250 B.R. 397, 399 (Bankr.M.D.Fla.1999), *citing In re Dunlap,* 215 B.R. 867, 869 (Bankr.E.D.Ark.1997).

In *Graves v. First Educators Credit Union* (*In re Graves*), 2007 WL 824059 (Bankr. N.D. Ala.), this Court stated:

> [T]o be eligible for confirmation, a proposed plan must specifically provide for the treatment of each secured claim. If the proposed distributions on a secured claim have a value of less than the amount of such claim because the debtor has reduced the claim by the amount of a recoupment, set-off, counterclaim or other defense, then the plan should so provide in no uncertain terms, and the debtor should object to the secured claim before plan confirmation so the amount of the secured claim can be determined. Inasmuch as Section 1327(a) results in a confirmed plan being binding on the debtor as well as creditors, failure to timely pursue such a reduction of a secured claim precludes the debtor from challenging the claim post-confirmation.

*Id.* at n.16.

Although not raised in their response to the Defendant's Motion, if given the chance, the Plaintiffs would no doubt argue that because their Complaint was filed and served before entry of the Confirmation Order, the Defendant must have known the Plaintiffs intended to pursue their claims for TILA violations post-confirmation. To the contrary, the Court views the events leading up to and culminating with the confirmation of the Plaintiffs' Plan as a settlement (implied, if not express) of the dispute between the Plaintiffs and the Defendant. This was the scenario: Plaintiffs filed their original chapter 13 plan, in which they understated the amount of Defendant's claim and under-valued its security by over $10,000 (BK Doc.19); Defendant objected to the plan and confirmation (BK Doc. 39); Plaintiffs filed a motion to value the Dodge

21

for substantially less than the Defendant's claim (BK Doc. 66); Defendant filed its response and objected to the proposed valuation (BK Doc. 80); Plaintiffs withdrew their motion to value (BK Doc.84) and filed an amended plan proposing to pay the full amount of the Defendant's claim (BK Doc. 102); Defendant withdrew its objection to confirmation (BK Doc. 110); Plaintiffs' Plan was confirmed without any mention of this adversary proceeding or the alleged TILA violations (BK Doc. 126). In light of these events, the next pleading the Court would have expected was a joint stipulation of dismissal of this adversary proceeding.[13]

As mentioned above, the facts recited by the Bankruptcy Court in *Jones v. GMAC*, *supra*, were very similar to those involved in the instant case. In particular, the debtor in *Jones v. GMAC* filed his complaint on November 6, 2006, and on December 7, 2006 his chapter 13 plan was confirmed, providing for full payment of GMAC's secured claim. *Id.* at *3. No mention was made in the plan or confirmation order of the TILA claims against GMAC. *Id.* Although the adversary proceeding was commenced before plan confirmation, the Bankruptcy Court held, "Jones' adversary proceeding is barred by the doctrine of res judicata due to confirmation of the

_____

[13] An example may be instructive: Assume a plaintiff filed two lawsuits based on a common cause of action; the first suit is filed in state court, and the second suit is filed in federal court. The state court suit is adjudicated on its merits and a final order is entered. Nonetheless the plaintiff continues to pursue the second suit in federal court. In a motion for summary judgment, the defendant raises claim preclusion as a complete defense based on the final order entered by state court. The plaintiff argues the pending federal suit put the defendant on notice that adjudication of the state suit was not intended to be a resolution of the common cause of action. In our hypothetical case the defendant is entitled to summary judgment, and so is the Defendant in this adversary proceeding. In effect, the Plaintiffs were pursuing two contemporaneous proceedings: this adversary proceeding and chapter 13 plan confirmation in their underlying bankruptcy case. Both required an adjudication of the same issue: the amount of the Defendant's secured claim. Once an adjudication of that issue was made under the Confirmation Order without reservation, the Plaintiffs were precluded from further litigating the same issue in this adversary proceeding.

Case 08-40027-JJR    Doc 47    Filed 11/04/08    Entered 11/04/08 15:43:32    Desc Main
Document    Page 22 of 23

debtor's plan which called for full payment of GMAC's claim." *Id.* at *14.

CONCLUSION:

The Plaintiffs asserted their claims affirmatively for TILA violations, not defensively as a recoupment. Their right to affirmatively assert such claims are barred by the expiration of the one-year statute of limitations. In addition, confirmation of the Plaintiffs' Plan under the Confirmation Order, which provided for full payment of the Defendant's secured claim without reservation or reduction for alleged TILA violations, constituted a final adjudication of the amount of the Defendant's allowed secured claim. If this adversary proceeding was allowed to continue, the amount of the Defendant's claim would be revisited and adjudicated once again. Under the doctrine of claim preclusion, the Plaintiffs are barred from further pursuing their cause of action for TILA violations in this adversary proceeding. Thus, the Court finds there is no issue of material fact remaining for trial, and the Defendant is entitled to summary judgment in its favor.

Pursuant to Rule 9021, a separate judgment will be entered contemporaneously herewith in conformity with this Opinion.

Dated: November 4, 2008

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

23